Rockingham,
Jan. 5, 1949. } No. 3787.

NELLIE A. WIGGIN *v.* GRACE M. PEACOCK *& a.*

*William H. Sleeper* and *Robert Shaw* (*Mr. Shaw* orally), for the plaintiff.

*John W. Perkins* and *Everett P. Holland* (*Mr. Holland* orally), for the defendants.

BLANDIN, J. There was evidence to sustain the Court's finding that the defendants neglected and refused to comply with the provisions of the covenant and the motion in effect to set aside the decree on the grounds that it was contrary to the law, the evidence, and the weight of the evidence was correctly denied. The plaintiff testified that the defendants refused to stay with her on occasion when she was sick although requested by her and that they thereafter abused her and generally made her life miserable. No reason appears why the Court could not believe her story in preference to the defendants'. There was corroboration to an extent of her evidence from other sources, and it is too elementary to require citation that a conflict of testimony such as this was for the Court to resolve.

The defendants also claim that the decree results in a forfeiture which equity should not take jurisdiction to enforce. The answer to this is that equity will not act in a harsh or oppressive manner, and

to enforce a forfeiture often comes to that. However, in this instance the Court has found the conditions of the covenant reasonable, that the defendants failed to live up to them and that they have in addition abused the plaintiff. It would appear highly inequitable to allow the defendants to profit from their wrongful acts at the expense of this aged and infirm woman. We know of no principle of equity now prevailing in this jurisdiction which would permit such a result. The law here is that equity will grant relief against, and by a parity of reasoning refuse to enforce a forfeiture "occasioned by the exercise of a legal right for purposes of injustice or oppression." *Parks* v. *Company*, 94 N. H. 454, 455. The plaintiff seeks to enforce no right here, legal or equitable, for purposes of injustice or oppression. Rather she asks that the defendants shall not be permitted to exercise their legal rights based upon their own wrong doing at her expense. The rule to be applied in this case should be one of reason and fairness and where the balance of right as here is in favor of the plaintiff and the intent of the parties plain equity should enforce her rights. See *Appleton* v. *Insurance Company*, 59 N. H. 541, 545. See also, *Carpender* v. *New Brunswick*, 135 N. J. Eq. 397, where the court dismissed a bill to enforce a forfeiture as prematurely brought, since the defendant had not been given a reasonable time in which to perform, but made it clear that a forfeiture would be enforced whenever it appeared equitable to do so. See also, 30 C. J. S., Eq., *s*. 57, *p*. 399. The motion to dismiss on the ground that equity will not enforce a forfeiture was properly denied.

The defendants' contention that the plaintiff's case fails because she did not request the defendants to stay with her and make a comfortable home for her, and that the Court erred in refusing defendants' request to find to this effect, cannot be sustained. The record shows that on one occasion the defendants did refuse at the plaintiff's request to take care of her and just before the final break-up they had so treated her that she was justified in not requesting them to come and nurse her and "help make a pleasant home" for her since they obviously had no intention of doing so. In this situation the defendants cannot complain that the plaintiff has failed to fulfil a condition when their misconduct has rendered it futile as a practical matter for her to do so. *Schwartz* v. *Company*, 82 N. H. 177, 179; *Dziatlik* v. *Holy Trinity &c. Church*, 86 N. H. 234, 236; *Barker* v. *Barker*, 16 N. H. 333, 337; 31 C. J. S., Estoppel, *s*. 108, *p*. 343; 21 C. J. S., Covenants, *ss*. 87, 94; 17 C. J. S., Contracts, *s*. 468.

The defendants take nothing by their exception to the Court's

granting the plaintiff's request for a finding of fact to the effect that the defendants lived in Delaware during the late spring, all summer and early fall of the year 1944 while the plaintiff was alone in Exeter. It appears the finding is somewhat ambiguous and not completely accurate. However, the Presiding Justice was fully acquainted with the situation as evidenced by his own findings which agreed substantially with the defendant's testimony. It is not believed that the latter were harmed by any inaccuracy here.

We have no difficulty in sustaining the Court's finding that a resulting trust arose in the Florida property in favor of the plaintiff. The record contains testimony that the plaintiff's reason for buying the property in the defendants' names at first was purely for the plaintiff's own benefit, so that local people would not take advantage of her by raising her taxes, or otherwise, because she already owned property on that street. The plaintiff paid all the running expenses, collected the rents and in general exercised complete dominion over the place before she left Florida in April, 1946. The Court found that the parties understood the property was the plaintiff's and the elements of control and intent, both necessary to effect a valid gift *inter vivos* are lacking. See *Dover &c. Bank* v. *Tobin*, 86 N. H. 209, and authorities cited; *Packard* v. *Foster*, *ante*, 47. A letter written by the plaintiff to the gas company in July, 1946 (defendant's exhibit B) upon which the defendant relied to show that Mrs. Wiggin released her rights in a resulting trust, if any, is not controlling. This was written after the quarrel when the plaintiff had left Florida in April of 1946 and the Peacocks had taken over the property and in fact sold it. Under these circumstances the plaintiff might naturally refuse to pay the gas bill on the house and write the company, as she did, that Mrs. Peacock "took over," especially when the defendants held the proceeds of the sale. No relinquishment of her rights is necessarily to be inferred from this action and the Court on all the facts was warranted in concluding that a resulting trust was established. *Lahey* v. *Broderick*, 72 N. H. 180, and cases cited; Restatement, Trusts, ss. 404, 443. See also, *French* v. *Pearson*, 94 N. H. 18, 19; *Foley* v. *Foley*, 90 N. H. 281, 282; *Crowley* v. *Crowley*, 72 N. H. 241, 243.

Having found the resulting trust the Court made a decree that the plaintiff was entitled to recover the sum of $5,750 from the defendants. This amount, representing the net selling price of the land realized by the defendants, although objected to by them was proper. The plaintiff had given them a lot worth $550 and had paid Mrs. Peacock a hundred dollars in cash. She had paid their expenses on occasion to

and from Florida to Exeter, New Hampshire. They had occupied her house in Florida for a time rent free, and had stayed with her for periods while she took care of substantially all the living expenses. No one can say that under all the circumstances the Court did not fairly balance the equities of these benefits against the value of any services rendered the plaintiff by the defendants, and reach a just result. See *Copeland* v. *Reynolds*, 86 N. H. 110, 113; *Newton* v. *Tolles*, 66 N. H. 136, 139. Under the broad powers of the Court to grant "such further relief as may be just" in accordance with the plaintiff's petition, this decree seems to have placed the parties as nearly as possible in *status quo* and is unobjectionable. 17 C. J. S., Contracts, s. 438.

The defendants' exception to the exclusion of a certified copy of the will of Dr. Wiggin, husband of the plaintiff, is not well founded. They admit that its terms imposed no legal obligation upon the plaintiff with reference to any property involved here. They suggest, however, its competency because there is evidence that Dr. Wiggin deeded his undivided half interest in certain other property which he and the plaintiff owned in common, to her, which property under his will would have been subject to a trust, on her representation that this property would go to the defendants when she was through with it. As this evidence is remote and might well necessitate the introduction of collateral issues it was within the discretion of the Trial Judge to exclude it. *Hunt* v. *Company*, 94 N. H. 421, and cases cited. This appears to dispose of all exceptions either briefed or argued and no others on the record appearing sustainable, the order is

*Decree affirmed.*

All concurred.