Grafton, }
Oct. 5, 1909. }

LISBON SCHOOL DISTICT No. 1 *v.* LANDAFF TOWN SCHOOL DISTRICT.

The word "resides," as used in section 1, chapter 96, Laws 1901, means actual habitation, and not the legal domicile acquired by residence with the intention of making a home.

Where the father of a family removes from one town with no definite intention of returning and takes up a habitation in another town with no definite intention of making it his permanent home, the former town is not liable for high-school tuition furnished to children of the family by the latter town during their residence therein.

ASSUMPSIT, for high-school tuition. Transferred from the March term, 1909, of the superior court by *Chamberlin*, J., on an agreed statement of facts.

Prior to November, 1905, O. A. Wilson, father of the child for whose tuition recovery is sought, lived on a farm in Landaff. In that month he sold all his farming tools and stock, and soon after removed to Lisbon with his family and most of his household goods and kept house there. His family consisted of his wife and two children, one of whom attended the high school in the plaintiff district during the fall, winter, and spring terms of 1905–06. When Wilson moved to Lisbon he was undecided as to his future residence. He had business in South Landaff which required him to be away from home, and he moved his family to Lisbon that they might be nearer the school his daughter was attending and be less lonesome. He intended to remain in Lisbon for the winter, but had no definite intention either of making Lisbon his home or of returning to Landaff to live. He continued to live with his family in Lisbon until the spring of 1907, when he went to Maine, removing his family thither in the fall of that year. In the spring of 1906, while living with his family in Lisbon, he was taxed in Landaff, and he also claimed and exercised the right to vote there in the fall of that year. Tuition for the fall term of 1905 was paid by the defendants to the plaintiffs. This action was brought to recover tuition for the winter term of 1905 and the spring term of 1906.

*George W. Pike*, for the plaintiffs.

*Smith & Smith* and *Raymond B. Stevens*, for the defendants.

PARSONS, C. J.    "Any town not maintaining a high school or school of corresponding grade shall pay for the tuition of any child who with parents or guardians resides in said town and who attends a high school or academy in the same or another town." Laws 1901, *c.* 96, *s.* 1.    By section 2 of the same chapter, in case of refusal to make payment as required such town is made liable in an action to the town furnishing the tuition; while by section 3, provision is made for the reimbursement from the state treasury of the sums paid as tuition in proportion to the inability of the town itself to bear the burden, as evidenced by its tax rate.    The amendments of 1903 (*c.* 118) limiting the amount of tuition per scholar for which towns could be held liable, and of 1905 (*c.* 90) authorizing districts to contract with high schools and academies for furnishing instruction to their scholars, do not directly affect the present question; but the three chapters taken together disclose a legislative purpose to secure the benefits of a high-school course at the expense of the state for scholars residing in a community where such a school was not and could not reasonably be maintained, from the lack of scholars or the poverty of the community.

As the liability is not imposed upon a district maintaining a high school, it is clear that the liability intended was for the tuition of such scholars as would properly have attended such a school had there been one in the district.    It is plain, therefore, that the distribution of the burden of high-school instruction according to the legal domicile of the scholars was not the primary object of the legislation.    Neither does it necessarily result therefrom, unless the language of the section—" who with parents or guardians resides in said town "—must be understood to mean " who has a legal domicile in the town."    As the legal domicile of the unemancipated minor would necessarily be that of her father, if the word " resides " were used in that sense, it would be necessary to inquire whether the father upon the facts disclosed did, despite his subsequent taxation and voting in Landaff, lose his previously existing domicile in that town.    But it has not been found necessary to pass upon this question.    " The word 'reside' is used in two senses: the one constructive, technical, legal; the other denoting the personal, actual habitation of individuals."    *Richardson*, C. J., in *Shattuck* v. *Maynard*, 3 N. H. 123, 124.    " To constitute a domicile—that is, to acquire it—two things must concur: residence and the intention of making it the home of the party.    To retain it after once acquired, actual residence is not indispensable; but it may be retained by the intention not to change it."    *Woods*, J., in *Hart* v. *Lindsey*, 17 N. H. 235, 243.

Wilson, having a legal domicile in Landaff, would not neces-

sarily lose it by the actual residence of himself and family in Lisbon for a temporary purpose, with no intention of making that place his home. According to the case, Wilson lived with his family in Lisbon from the fall of 1905 until the spring of 1907, finally removing them to Maine in the fall of that year. The actual habitation of the family—the place where the scholar lived with her family during this time—was Lisbon and not Landaff; and if the word " resides " was used in the statute in this sense, she did not reside in Landaff with her parents, even if her father retained a legal residence in that town for the purposes of taxation and the exercise of the right of suffrage.

" Words in a statute are to be construed according to the common and approved usage of the language, unless they have acquired a peculiar and appropriate meaning in the law, or from the context or manifest purpose of the legislature it is apparent a different meaning was intended." *Opinion of the Justices*, 73 N. H. 625, 626; P. S., c. 2, ss. 1, 2. " The popular signification of the word ' reside ' is, to live in a place; to dwell; to sojourn; to stay." *Worcester* v. *East Montpelier*, 61 Vt. 139, 142. Section 1, chapter 93, Public Statutes, is: " No person shall attend school, or send a scholar to the school, in any district of which he is not an inhabitant, without the consent of the district or of the school board." In the construction of this section it has been said that residence " for the purpose of schooling is not the residence declared essential for taxation, or the exercise of the right of suffrage," and " that ordinarily, actual residence was all that was required to entitle persons of suitable age to attend the school." *School District* v. *Pollard*, 55 N. H. 503, 504, 507; *School District* v. *Bragdon*, 23 N. H. 507, 510.

The policy of the law not only permits, but requires, the attendance of the scholar in the district where he lives. Under our statutes, every person having the custody and control of a child of a certain age, " residing in a school district in which a public school is annually taught," who does not cause the child to attend all the time school is in session, is subject to a fine. P. S., c. 93, ss. 14, 15; Laws 1901, c. 61; Laws 1903, c. 13. The age of the child in this case does not appear; but if the legal domicile of the child in some town other than that in which it was actually living were an answer to a prosecution under this section, the purpose of the statute would be defeated. The special purpose of the act, the general policy of the law, prior judicial utterance upon the subject, and the necessary meaning of the same term in existing statutes relating to the same general subject, all tend to prove that the language of the section was used in its ordinary popular sense. Therefore, while in some situations residing in a place

may mean having a legal domicile therein, by this statute was intended an actual—not a technical—residence in the town. As the child for whose tuition payment is sought did not in the statutory sense reside with her parents in Landaff, but did actually reside with them in Lisbon, there can be no recovery, since the action can be maintained only by force of the statute. *New Hampton Institution* v. *School District*, 74 N. H. 412.

It is not found that the child's father, when he moved his family to Lisbon "that they might be nearer the school his daughter was attending and be less lonesome," intended to defraud the plaintiff district in the matter of the education of his children. If his action could be found to constitute such fraud, there is no suggestion that the defendants were party thereto. If the child attended the school under such circumstances as to make the father liable for her tuition, or could not rightfully have attended except by contract with the district, still as she did not within the meaning of the statute reside in the defendant district with her parents or guardian, the action cannot be maintained.

*Judgment for the defendants.*

WALKER, YOUNG, and PEASLEE, JJ., concurred: BINGHAM, J., concurred in the result, holding that the child's father had abandoned his domicile in Landaff.